# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| The Noco Company, Inc., | Case No. 1:20-cv-02615-PAB |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| Shenzhen Xinguodu Technology Co., Ltd. d/b/a Megawise, | MEMORANDUM OPINION AND ORDER |
| **Defendant** | |

Currently pending is Plaintiff The Noco Company, Inc.'s Motion for Leave to Serve Defendant by Alternative Means. (Doc. No. 11.) For the following reasons, Plaintiff's Motion is GRANTED, as follows.

## I.  Background

On November 20, 2020, Plaintiff The Noco Company, Inc. ("Plaintiff" or "Noco") filed a Complaint for Trademark Infringement and related claims against Defendant Shenzhen Xinguodu Technology Co., Ltd. d/b/a Megawise ("Defendant" or "Megawise").  (Doc. No. 1.)  According to Plaintiff, Defendant is organized under the laws of China and engaged in the design, manufacture, and sale of battery chargers and jump starters under the brand name "Megawise."  Megawise is alleged to be a Chinese entity with a Chinese principal place of business.  (*Id*. at ¶¶ 3, 10.)

Noco is an Ohio corporation that designs, manufactures, and sells battery chargers, portable power devices, and battery products and accessories.  (*Id.* at ¶ 2.)  On September 15, 2015, Noco registered a trademark with the U.S. Patent and Trademark Office (USPTO) for "ULTRASAFE®," with Registration No. 4,811,656 (the "Trademark"), covering "battery jump starters, battery chargers, battery packs, [and] inverters" in International Class 009.  (*Id.* at ¶¶ 18-19 & Ex. 1.)  Noco also obtained an international registration of the Trademark covering the same goods, with registration number 1481445.  (*Id.* at ¶ 20 & Ex. 2.)  In the Complaint, Noco alleges that "Megawise is using the Trademark in connection with its advertisement, offering for sale, and sales of battery chargers and jump starters as well as in the course of performing retail services online."  (*Id.* at ¶ 25.)  Specifically, Megawise is alleged to be "unlawfully and unfairly promoting its competing products by using phrases protected by Noco's Trademark, including 'Ultra Safe.'"  (*Id.* at ¶ 26.)

Noco alleges that Defendants sell their products to consumers in the United States online, using Amazon.com, through the Amazon storefront Megawise, through its own website, megawise.com, and possibly other websites.  *See* Declaration of Alexander M. Welsh (Doc. No. 11-1 at ¶¶ 5-6).  Prior to initiating the instant lawsuit, Noco, through counsel, attests that "Defendant's Amazon username was the only identifying information available to Noco at the time it discovered Defendant's infringement."  (*Id.* at ¶ 7.)  Noco filed its Complaint on November 20, 2020, and ten days later, sent the summons and Complaint by registered mail to a Chinese address (the "City Holiday Address") for Defendant that Noco found through a USPTO TESS search.  (*Id.* at ¶¶ 8-9.)  For reasons unknown to Noco, the U.S. Postal Service never delivered the summons and Complaint to the address.  (*Id.* at ¶ 10.)

On April 2, 2021, Noco sent a request to waive service to Defendant at the City Holiday Address, this time via Federal Express. (*Id.* at ¶ 11.) This package was returned for the reasons of "incorrect address" and "customer unavailable or business closed." (*Id.* at ¶ 12.) Also on April 2, 2021, Noco sent a Waiver Package to a second, similar Chinese address located in documents that Defendant had filed with the USPTO (the "Taoyuan Street Address"). (*Id.* at ¶ 13.) The Waiver Package sent to this second address was also returned for "incorrect address" and "customer unavailable or business closed." (*Id.* at ¶ 14.)

In further efforts to locate Defendant, Noco, through counsel, communicated with two attorneys who were listed as representing Megawise on filings with the USPTO. (*Id.* at ¶ 15.) The first attorney, Lisa Dunner, after initially stating that she would communicate with Megawise regarding Noco's waiver request, later represented that she was unable to reach her client. (*Id.* at ¶ 16.) The second attorney Noco contacted, Timothy Wang, communicated that he was not employed to represent Megawise in this present litigation. (*Id.* at ¶ 17.) As a result of these difficulties in locating a valid address to reach Defendant, Noco attests through counsel that it has searched several sources in its efforts to locate Megawise's address. (*Id.* at ¶ 18.) For example, Noco has searched Defendant's website, the TransUnion commercial database, the USPTO database TESS, various social media sites, OpenCorporates, and Google. (*Id.*) Noco attests that to date, it "has attempted to contact Megawise at each and every point of contact and address that Megawise represents to the public" and that it "has been unable to locate Defendant's correct address." (*Id.* at ¶¶ 19-20.)

Concurrent with Noco's efforts to send Waiver Packages to the physical addresses it was able to locate for Defendant, Noco on April 1, 2021, also emailed a scanned, digital copy of the complete Waiver Package to the email address "support@megawise.com." (*Id.* at ¶ 21.) This email address is

connected with Megawise's business and is listed on Megawise's website and product manuals. (*Id.*) Noco attests that this email did not bounce back nor did it indicate that the email had been rejected or undelivered. (*Id.* at ¶ 22.)

On August 20, 2021, Noco filed the instant Motion seeking leave pursuant to Fed. R. Civ. P. 4(f)(3) to serve Defendant by email. (Doc. No. 11.) As this Defendant has not been served, no opposition has been filed.

II.     **Legal Standard**

As the Sixth Circuit has noted, the requirement of proper service of process "is not some mindless technicality." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991). *See also Federal Trade Commission v. Repair All PC, LLC*, 2017 WL 2362946 at * 2 (N.D. Ohio May 31, 2017). Rather, service of a summons and complaint "must meet constitutional due process and the requirements of the federal rules in order for jurisdiction to exist over a defendant." *Federal Trade Commission*, 2017 WL 2362946 at *2.

Federal Rule of Civil Procedure 4(h) governs international service of process on foreign businesses. Specifically, this Rule authorizes service of process on a foreign business in the same "manner prescribed by Rule 4(f) for serving an individual, except personal delivery . . ." Fed. R. Civ. P. 4(h)(2). Rule 4(f) provides, in relevant part, as follows:

> Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> \*\*\*
>
> (3) by other means not prohibited by international agreement, as the court orders.

4

Fed. R. Civ. P. 4(f).[1]

Here, the United States and China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (hereinafter "the Hague Convention"), as referenced in Rule 4(f)(1). *See Noco Company v. Liu Chang*, 2019 WL 2135665 at *2 (N.D. Ohio May 15, 2019).[2] The Hague Convention is a multilateral treaty that was designed to supply a simple way to serve process abroad, assure that foreign defendants receive actual and timely notice of suit, and facilitate proof of service. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988); *Water Splash, Inc. v. Menon*, ---- U.S. -----, 137 S.Ct. 1504, 1507 (2017). The Hague Convention states that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention, Art. 1. As the Supreme Court has noted, "[t]his language is mandatory," and compliance with the Hague Convention is required "in all cases in which it applies." *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699.

"The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Id*. at 698. The central authority must attempt to serve the defendant by a method that is compatible with the receiving country's domestic laws, and then provide the applicant with a certificate either confirming that

---

[1] Rule 4(f)(2) applies "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or (C) unless prohibited by the foreign country's law, by: (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt;." Fed. R. Civ. P. 4(f)(2). Noco does not argue that Rule 4(f)(2) is relevant to the instant motion.

[2] *See also* the Hague Conference website located at https://www.hcch.net.

service was successful or listing the reasons that prevented service. *See* Hague Convention, Articles 2-7. The Hague Convention also permits certain alternative methods of service (including through postal channels) unless the receiving country objects. China has objected to most of these alternative methods of service, including service by postal channels. *See Liu Chang*, 2019 WL 2135665 at *2. *See also* China – Central Authority & Practical Information, Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=243. As a result, for service in China, the Hague Convention primarily authorizes service through China's central authority (i.e., the Ministry of Justice) that arranges for service according to domestic law. *Id.* Although compliance with the Hague Convention is mandatory in all cases to which it applies, it does not apply "where the address of the person to be served is not known."[3] Hague Convention, Art. 1.

The Sixth Circuit has not directly addressed whether a party must first attempt service through the Hague Convention pursuant to Rule 4(f)(1) before seeking leave to use alternative methods of service under Rule 4(f)(3). Many district courts within this Circuit have concluded that a party need not do so, finding that there is no hierarchy or preference among the methods of service set forth in Rule 4(f). *See, e.g.*, *Phoenix Process Equip. Co. v. Capital Equip. & Trading Co.*, 250 F. Supp. 3d 296, 306 (W.D. Ky. 2017); *Lexmark Int'l Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 260 (S.D. Ohio 2013); *Federal Trade Commission*, 2017 WL 2362946 at *3; *Slay v. IB Travelin, Inc.*, 2019 WL 572877 at *2 (W.D. Tenn. Feb. 12, 2019); *Studio A Entertainment, Inc. v. Active Distributors, Inc.*, 2008 WL 162785 at n. 1 (N.D. Ohio Jan. 15, 2008).

---

[3] Additionally, the Hague Convention does not apply if service can be completed without transmitting documents abroad, e.g., if substitute service on a domestic agent of the defendant is valid under local law and completed. Further, in the case of "urgency" the Hague Convention permits courts to enter "provisional or protective measures," which has been interpreted to include "special forms of service." *See* Hague Convention, Art. 15; Notes of Advisory Committee on 1993 Amendment to Rule 4, subdivision (f)(3).

Other district courts have expressly disagreed, finding that, if the Hague Convention is applicable, Rule 4(f) requires that parties first attempt service by the means designated in the Convention pursuant to Rule 4(f)(1). *See, e.g.*, *Liu Chang*, 2019 WL 2135665 at *4-5; *Chanel v. Zhibing*, 2010 WL 1009981 at *3 (W.D. Tenn. March 17, 2010); *Chanel v. Xu*, 2010 WL 396357 at *4 (W.D. Tenn. Jan. 27, 2010). Still other district courts within the Sixth Circuit have not expressly decided the issue but have noted that the "preferred method for service of a foreign party is service pursuant to the methods authorized by" the Hague Convention. *See, e.g.*, *Noco Company v. Shenzhen Dika Na'er E-Commerce Co., Ltd.*, 2017 WL 11540638 at *2 (N.D. Ohio Nov. 22, 2017); *Noco Company v. Shenzhen Anband Technology,* 2018 WL 1373822 at *2 (N.D. Ohio March 19, 2018); *Midmark Corp. v. Janak Healthcare Private Limited*, 2014 WL 1764704 at *2-3 (S.D. Ohio May 1, 2014).

As regards Rule 4(f)(3), courts agree that service under that Rule must be (1) directed by the court; and (2) not prohibited by international agreement. *See, e.g.*, *Lexmark Intern., Inc. v. Ink Technologies Printer Supplies, Inc.*, 295 F.R.D. 259 (S.D. Ohio 2013); *Federal Trade Commission*, 2017 WL 2362946 at *3. Courts have further found that, before service may be authorized under that Rule, parties may be required to show that they have "reasonably attempted to effectuate service on the defendant, and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." *Shenzhen Anband Technology*, 2018 WL 1373822 at *2. *See also Phoenix Process Equip. Co.*, 250 F. Supp. 3d at 306; *Federal Trade Commission*, 2017 WL 2362946 at *3; *Ahkeo Labs LLC v. Plurimi Investment Managers, LLP*, 2017 WL 2793918 at *2 (N.D. Ohio June 26, 2017).

Lastly, the Court must ensure that alternative means of service under Rule 4(f)(3) "comport with constitutional notions of due process, namely that the service of process be reasonably calculated, under all the circumstances, to apprize [sic] interested parties of the pendency of the action and afford them an opportunity to present their objections." *Lexmark Int'l Inc. v. Ink Techs. Printer Supplies, LLC*, 291 F.R.D. 172, 174 (S.D. Ohio 2013). *See also Aerodyn Engineering LLC v. Fidia Co.*, 2020 WL 3000509 at *1 (E.D. Mich. June 4, 2020); *Federal Trade Comm'n*, 2017 WL 2362946 at *2.

Rulings on alternative service under Rule 4(f)(3) are discretionary. *See Shenzhen Anband Technology*, 2018 WL 1373822 at *2; *Federal Trade Commission*, 2017 WL 2362946 at *3. As one district court noted, "Rule 4(f)(3) empowers the court with flexibility and discretion to fit the manner of service utilized to the facts and circumstances of the particular case." *Federal Trade Commission*, 2017 WL 2362946 at *3.

### III.     Analysis

In the instant case, Noco has not attempted to serve Defendant pursuant to the Hague Convention; i.e., by transmitting the appropriate service documents to China's Central Authority for service according to domestic law. Noco asserts that the Hague Convention "does not apply 'where the address of the person to be served is not known.'" (Doc. No. 11) (quoting *Noco Co. v. Zhejiang Quingyou Elec. Commerce Co.*, 338 F.R.D. 100, 104 (N.D. Ohio 2021)). Specifically, Noco attests through counsel that mailings to the physical Chinese addresses located for Defendant were returned for "incorrect address" and "customer unavailable or business closed." (Doc. No. 11-1 at ¶¶ 9-14.) Further, Noco avers that its efforts to reach Defendant through two attorneys listed as representing Defendant, as well as its efforts searching various websites to locate Defendant's current address have

been unsuccessful. (*Id.* at ¶¶ 15-18.) Lastly, Noco asserts that under the circumstances presented, it "requests leave to use email to serve Defendant," arguing that it is a method not prohibited by international agreement and which has been authorized in this district. (Doc. No. 11 at PageID# 82.) Noco argues that "it is within this Court's discretion to order an alternative method of service that comports with constitutional due process requirements." (*Id.* at PageID# 83.) Noco represents that service via email is reasonably calculated to apprise Defendant of the litigation and, therefore, comport with due process. (*Id.*)

For the following reasons, the Court grants Noco's request to serve Defendant Megawise through email. As an initial matter, the Court finds that the Hague Convention does not apply because Defendant Megawise's address is unknown. Specifically, as set forth *supra*, Noco has presented evidence that (1) Noco located two putative physical addresses in China for Defendant using the USPTO TESS search; (2) Noco mailed the summons and Complaint to one of the addresses via the U.S. Postal Service and sent a Waiver Package to both addresses on April 2, 2021 via Fed Ex; and (3) the Packages were not delivered due to "incorrect address" and "customer unavailable or business closed." (Doc. No. 11-1 at ¶¶ 9-14; Doc. No. 9.) Noco has further indicated that it did not find any other physical address for Defendant, despite searching several websites and databases. (Doc. No. 11-1 at ¶ 18.) Noco also represents that to date, it has attempted to contact Megawise "at each and every point of contact and address that Megawise represents to the public." (*Id.* at ¶ 19.) Based on the above, the Court agrees that Defendant Megawise's address is unknown. Therefore, the Hague Convention does not apply and Rule 4(f)(1) is not applicable.

The Court further finds that, under the circumstances presented, service on Megawise through email is appropriate and reasonably calculated to apprise Megawise of the instant lawsuit. As an

9

initial matter, the Court finds that Noco reasonably attempted to effectuate service by sending the Waiver Package to the physical addresses it located through the USPTO and making inquiries through counsel known to have represented Defendant. The Court further finds that service through electronic channels (such as email) is not prohibited by the Hague Convention. *See, e.g.*, *Shenzen Dika Na'er E-Commerce Co., Ltd.*, 2017 WL 11540638 at *3 (noting that "federal courts have repeatedly found that email service is not prohibited by the Hague Convention"); *Shenzhen Anband Technology*, 2018 WL 1373822 at *3 (same); *Lexmark Int'l*, 295 F.R.D. at 261 (same). This is the case even where a signatory country has objected to the alternative methods of service in Article 10, as China has. *See Lexmark Int'l*, 295 F.R.D. at 262; *Noco v. Khaustov*, 2019 WL 4218637 at *3 (N.D. Ohio Sept. 5, 2019) ("[F]ederal courts have found that '[w]here a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as email or publication.'") (quoting *Adidas AG v. Adidas.style*, 2018 WL 1801197 at *1 (S.D. Fla. Feb. 7, 2018)).

Finally, Noco has provided sufficient information from which the Court can determine that the requested alternative service via email is reasonably calculated to reach Megawise. Specifically, Noco has presented evidence that the email address "support@megawise.com" is connected with Megawise's business and listed on its website and product manuals. (Doc. No. 11-1 at ¶ 21.) Noco asserts that on April 1, 2021, it emailed a scanned, digital copy of the Waiver Package to support@megawise.com and that the email "did not bounce back nor indicate . . . in any way that the message was rejected or not delivered." (*Id.* at ¶ 22.)

Courts have authorized electronic service under similar circumstances, particularly where a defendant's business takes place online and the defendant has provided an incomplete or incorrect physical address. As one district court explained:

> Serving Defendants by e-mail not only meets constitutional standards, but also is the method of service most likely to reach Defendants. Defendants have organized their online business so that the only way customers can contact them to place an order or lodge an inquiry is by e-mail. Although every physical address listed by Defendants proved to be fraudulent upon investigation, every e-mail account listed was active. This is hardly surprising. Any e-commerce merchant depends on electronic communication, and in particular e-mail, for his livelihood. *See Alexandra Jacobs,* Happy Feet: Inside the Online Shopping Utopia, The New Yorker, Sept. 14, 2009, at 67 (noting that most web merchants "seem to be operated by spectral forces rather than human beings" because they handle customer service solely by e-mail). Even "e-business scofflaw[s]," *Rio Props*., 284 F.3d at 1018, must maintain valid e-mail accounts and check them regularly to receive new orders and provide customers with receipts and shipping information.

*Chanel v. Xu*, 2010 WL 396357 at *4. *See also Aerodyn*, 2020 WL 3000509 at *2 ("Plaintiff is also correct in asserting that service via email comports with principles of due process where the serving party has shown, as Plaintiff has done here, that the party being served does business online and the identified emails are valid.")

In light of Noco's good faith efforts to service Megawise via both physical and electronic means, the Court grants Noco's Motion and orders Noco to serve Megawise through email within fourteen (14) days of the date of this Order. Noco shall comply with Fed. R. Civ. P. 4 by providing proof of service once service is completed by the above approved means. In addition, the Court directs Noco to serve a copy of all pleadings on Megawise through email. Should Megawise enter a formal appearance, service shall revert to standard processes.

**IV.     Conclusion**

For all the reasons set forth above, Plaintiff's Motion for Alternative Service (Doc. No. 11) is GRANTED. Noco is ordered to serve Defendant Megawise through email within fourteen (14) days of the date of this Order. Noco shall comply with Fed. R. Civ. P. 4 by providing proof of service once service is completed by the above approved means. In addition, the Court directs Noco to serve a copy of all pleadings on Megawise through email. Should Megawise enter a formal appearance, service shall revert to standard processes.

**IT IS SO ORDERED.**

Date: September 13, 2021

      s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE